UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

DONTE CURRY,

    Plaintiff,

v.

MICHAEL A. STUMP *et al.*,

    Defendants.

CAUSE NO. 1:21-CV-77 DRL-SLC

OPINION AND ORDER

Donte Curry, a prisoner proceeding without a lawyer, filed a motion for leave to amend his complaint. The proposed amendment was submitted before the deadline for amending pleadings, and Mr. Curry has not previously amended his complaint. In the interest of justice, the motion will be granted. *See* Fed. R. Civ. P. 15(a)(1)(A).

Under 28 U.S.C. § 1915A, the court must screen the amended complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must nevertheless give a *pro se* complaint liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

As with his original complaint, Mr. Curry complains about an incident occurring at the Allen County Jail on September 18, 2019, while he was a pretrial detainee.[1] He claims his cellmate falsely reported that Mr. Curry punched him in the face. As a result of this accusation, Mr. Curry was told by Officer Braden M. Burns that he should pack his belongings because he was going to segregation. Mr. Curry complied and was handcuffed for transport, but on the way to segregation he asked to talk to Sergeant Scott Sanderson about what had occurred. He was told he could wait for Sergeant Sanderson in a receiving area; but, after a few minutes passed without Sergeant Sanderson's arrival, an unnamed officer told Mr. Curry he had to leave because the officer had to take a group of detainees to church services. Officers Michael A. Stump and Gary M. Apps then arrived to escort him to segregation.

Mr. Curry repeated his request to speak to Sergeant Sanderson, but Officer Stump allegedly approached him "in an aggressive way" and told him that he could not speak to the sergeant. This officer allegedly "grabbed and yanked [his] right arm" and pulled him toward the elevator. While they were on the elevator, Mr. Curry told the officers that he did not feel they were acting according to jail protocols. Officer Stump went "into a rage" and pressed him up against the back of the elevator so hard that he had difficulty breathing, and hit him with several "knee strikes" to his hip, thigh, and lower back. During this time, Officer Apps allegedly assisted Officer Stump by holding Mr. Curry down.

---

[1] He has since been transferred to the custody of the Indiana Department of Correction and is currently incarcerated at Putnamville Correctional Facility (ECF 39 at 1).

After they got off the elevator, Mr. Curry claims he requested medical care. Officers Stump and Apps escorted him to the nursing unit, but they allegedly told Nurse Gina Adam to write down that Mr. Curry was refusing medical treatment. He claims Nurse Adam knew he needed medical care but nevertheless did as the officers asked and wrote down that he was refusing treatment. She refused to provide him any care on that date. He claims that he later filed a grievance about the use of excessive force by Officers Stump and Apps, but Captain Alan D. Cook allegedly failed to conduct a proper investigation into his complaint. He also wrote several letters to Sheriff David Gladieux complaining about what occurred, but the Sheriff allegedly ignored him.

Mr. Curry was subsequently charged with fighting and other disciplinary infractions as a result of his cell mate's accusation. On September 26, 2019, he went before a disciplinary hearing board comprised of Officers Penny Lake, J. Adams, and J. Elliott. He claims these officers failed to investigate his claim that the inmate had made up the charge and also denied him witnesses that he requested. He was ultimately found guilty of certain infractions and ordered to serve 45 days in disciplinary segregation.

The court previously granted Mr. Curry leave to proceed against Officers Stump and Apps on a claim of excessive force. Because Mr. Curry was a pretrial detainee at the time of these events, his rights arise under the Fourteenth Amendment. *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018) (citing *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)). To establish an excessive force claim under the Fourteenth Amendment, the plaintiff must show that "the force purposefully or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. 396-97. In determining whether force was objectively

unreasonable, courts consider such factors as the relationship between the need for force and the amount of force that was used, the extent of any injuries the plaintiff suffered, the severity of the security problem, the threat the officer reasonably perceived, and whether the plaintiff was actively resisting. *Id.* at 397. Giving Mr. Curry the inferences to which he is entitled at the pleading stage, he has again alleged a plausible excessive force claim against Officers Stump and Apps.

He also names Captain Cook and Officer Burns as defendants, but there is nothing in the amended complaint from which it can be plausibly inferred that these officers used excessive force against Mr. Curry, were present on the elevator, or had a reasonable opportunity to intervene to stop the use of force by the other officers. *See Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). They cannot be held liable for constitutional violations committed by other correctional officers.[2] *Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009).

He also sues Allen County Sheriff David Gladieux, but it cannot be plausibly inferred from the amended complaint that the Sheriff was present at the jail during this incident or otherwise personally involved in the officers' use of force. There is no general supervisory liability under 42 U.S.C. § 1983, and the Sheriff cannot be held liable solely

---

[2] If he is trying to assert a constitutional claim against Captain Cook for mishandling his grievance, this does not state a viable claim. *Daniel v. Cook Cty.*, 833 F.3d 728, 736 (7th Cir. 2016). Likewise, if he is trying to assert a state law negligence claim against these defendants, there is no indication he complied with the notice requirements of the Indiana Tort Claims Act. Ind. Code § 34–13–3–6. Even if he did, that Act shields government employees from liability so long as the claim arises from acts performed within the scope of their employment, as Mr. Curry alleges here. Ind. Code § 34–13–3–3; *see also Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014) ("Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment.").

because he is the official in charge of the jail. *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020). The fact that Mr. Curry wrote to the Sheriff after this incident to complain about what had occurred also does not establish a basis for imposing personal liability on him. *Burks*, 555 F.3d at 596.

It appears Mr. Curry may be attempting to assert an official capacity claim against the Sheriff pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Under *Monell*, municipal entities "cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). "The 'official policy' requirement for liability under § 1983 is to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* (citations, internal quotation marks, and emphasis omitted). There is no "heightened" pleading standard applicable to *Monell* claims. *White v. City of Chicago*, 829 F.3d 837, 843 (7th Cir. 2016). Nevertheless, the "plausibility" standard set forth in *Twombly* and *Iqbal* applies equally to *Monell* claims. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017); *McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011).

In support of his *Monell* claim, Mr. Curry alleges as follows: "Because the sheriff failed to address these issues by the policy & procedures the sheriff and his department has created a custom to condone in other staff failure to follow the U.S. Constitution and state & federal laws." This allegation is somewhat confusing, and there is no factual content to suggest plausibly that the Sheriff has adopted an official policy of promoting

5

or condoning the unnecessary use of force by his staff. Rather, the narrative section of the complaint describes only an injury caused by the actions of individual guards, not an injury caused by an official policy or practice of the Sheriff's Department. *Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016) (observing that *Monell* requires a plaintiff to show that an official policy "was the 'moving force' behind his constitutional injury").

To the extent he is trying to allege a widespread practice, his allegations are too vague to support a plausible *Monell* claim. To succeed on a widespread practice theory of *Monell* liability, "the plaintiff must demonstrate that the practice is widespread and that the specific violations complained of were not isolated incidents." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). "At the pleading stage . . . a plaintiff pursuing this theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Id*. The purpose of this requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021).

In the amended complaint, Mr. Curry only describes his own experience related to an isolated use of force by two officers who allegedly overreacted when he accused them of violating jail policies. He suggests incidents of excessive force have occurred before at the jail, but this alone isn't enough to "show a sufficiently specific pattern of conduct to support the general allegation of a custom or policy." *Flores v. City of S. Bend*, 997 F.3d 725, 733 (7th Cir. 2021). "Finding otherwise would stretch the law too far, opening municipalities to liability for noncodified customs in all but the rarest of

6

occasions, as long as a plaintiff can find a few sporadic examples of an improper behavior." *Id.* Mr. Curry has not alleged a plausible *Monell* claim.

Mr. Curry also names as defendants the three officers who were involved in his disciplinary hearing, claiming that they violated his due process rights. As the court previously explained to him, the Constitution does not create a due process liberty interest in avoiding transfer within a correctional facility or remaining in the general population. *Sandin v. Conner*, 515 U.S. 472 (1995); *see also Miller v. Dobier*, 634 F.3d 412, 415 (7th Cir. 2011) (applying *Sandin* to detainee's due process claim). An inmate is entitled to due process protections only when his detention is lengthened, or when he is subjected to more restrictive conditions that pose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Inmates have no liberty interest in avoiding short-term transfer to segregation, *Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008), or in avoiding restrictions "that do not substantially worsen the conditions of confinement." *White v. Scott*, 849 F. App'x 606, 608 (7th Cir. 2021). Placement in long-term segregation can implicate a liberty interest, requiring further inquiry into whether the conditions of confinement imposed an atypical, significant hardship. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698-99 (7th Cir. 2009).

Mr. Curry alleges that he served a little over a month in segregation as a result of the disciplinary charge. There is no indication this lengthened his detention at the jail. As with his original complaint, he does not describe any unduly harsh conditions within the segregation unit. His allegations do not trigger a due process liberty interest, and these defendants will be dismissed.

Mr. Curry also seeks to add a claim against Nurse Adam. Because he was a pretrial detainee when these events occurred, his medical care claim must be analyzed under the Fourteenth Amendment. *Kingsley*, 565 U.S. at 395. To state a claim, he must allege that Nurse Adam acted "with purposeful, knowing, or reckless disregard of the consequences" of her actions. *Miranda*, 900 F.3d at 354. He must also allege that the medical care he received, or the denial of that medical care, was "objectively unreasonable." *Id*. (emphasis omitted).

Mr. Curry is not particularly clear as to the extent of the injuries he suffered as result of this incident; but, giving the amended complaint liberal construction, he alleges that after this incident he had severe pain and bruising in his arm and other body parts. He sought medical care from Nurse Adam, but he claims she refused him treatment and falsely wrote down that he was refusing care because the officers told her to, even though she knew he was in need of medical care. He will be permitted to proceed against Nurse Adam.

For these reasons, the court:

(1) GRANTS the plaintiff leave to amend the complaint;

(2) GRANTS the plaintiff leave to proceed against Officer Michael A. Stump and Officer Gary M. Apps in their personal capacity for money damages for using excessive force against him on September 18, 2019, in violation of the Fourteenth Amendment;

(3) GRANTS the plaintiff leave to proceed against Nurse Gina Adam in her personal capacity for money damages for denying him necessary medical care on September 18, 2019, in violation of the Fourteenth Amendment;

(4) DISMISSES all other claims;

(5) DISMISSES David Gladieux, Braden M. Burns, Penny Lake, J. Elliott, J. Adams, and Alan D. Cook as defendants;

(6) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Officer Michael A. Stump, Officer Gary M. Apps, and Nurse Gina Adam and to send them a copy of this order and the amended complaint pursuant to 28 U.S.C. § 1915(d);

(7) ORDERS the Allen County Sheriff's Office to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent this information is available; and

(8) ORDERS Officer Michael A. Stump, Officer Gary M. Apps, and Nurse Gina Adam to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

August 30, 2021 *s/ Damon R. Leichty*
Judge, United States District Court